UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION AT LAFAYETTE

| | |
|---|---|
| DUSTIN LEE BORDERS,<br><br>  Plaintiff,<br><br>  v.<br><br>THE LAFAYETTE POLICE<br>DEPARTMENT, et al.,[1]<br><br>  Defendants. | CAUSE NO. 4:24-CV-39-CCB-MGG |

OPINION AND ORDER

Dustin Lee Borders, a prisoner without a lawyer, filed a complaint. ECF 2. Under 28 U.S.C. § 1915A, the court must screen the complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. To proceed beyond the pleading stage, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court must give a pro se complaint liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). That said, a plaintiff can plead himself out of court if he pleads facts that preclude relief. *See Atkins*

---

[1] Borders refers to this defendant as "The Lafayett Police Deportment" throughout his complaint, but the court will use the correct spelling in this order for purposes of clarity.

*v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011); *McCready v. Ebay, Inc.*, 453 F.3d 882, 888 (7th Cir. 2006).

Borders alleges he was subjected to excessive force during an arrest on February 25, 2019, by officers from the Lafayette Police Department. He was at his mother's house when the officers showed up to serve a warrant and "things got out of hand." ECF 2 at 2. Borders hid in the bathroom and refused to come out while the officers banged on doors and windows. He sent his mother and girlfriend outside to let the officers know he would be "coming out soon." *Id*. Borders' brother arrived and tried to get him to surrender. Lt. Robinson spoke with Borders via the brother's phone, and he heard the girlfriend tell Borders "[t]o kill her and myself." *Id*. Lt. Robinson asked Borders, "What's going on[?]" Borders told Lt. Robinson that his girlfriend would not go outside and he stated, "[A]ll I want to do is hurt myself." *Id*. Lt. Robinson responded, "You don't want to do that." *Id*. Right before ending the call, Borders responded, "I do and I see the cops." *Id*.

Tear gas then began seeping into the bathroom, and there was "a lot of yelling." *Id*. Borders saw a multi-tool near the door, so he grabbed it. The door was knocked open, and his girlfriend fell on top of him into the shower. Two officers with shields tumbled onto them as well. They were yelling, "Put your hands up[!]" *Id*. at 3. Borders claims he had his hands up, and "right before" he got shot in his hip, he told the officers, "I'm Done I'm Done!!!" *Id*. The officers pulled Borders' girlfriend up, jumped on top of him, and punched him in the face. Two officers then flipped him over and handcuffed him. When they got him outside, they slammed him to the ground. One

2

officer had a knee on his back and was sitting on top of him. Borders told the officer, "Get off me, and get me a cigarettes! (sic)" *Id*. An ambulance arrived to provide medical assistance, but Borders refused because he was scared.

"After sometime" Borders received his "official paper work." *Id*. It showed that Officer Ian O'Sheilds shot him two times. It also showed that Lt. Robinson was "missing a round in one of his magazine[s] that was on his vest." *Id*. Although Lt. Robinson denied firing his weapon, and despite the fact that the "round was missing from his magazine from his vest and not his handgun," Borders believes Lt. Robinson could have fired a shot because witnesses said they heard three shots in total. *Id*. He has sued the Lafayette Police Department, Officer Ian O'Sheilds, and Lt. Robinson for monetary damages, a "public apology on the news," and a "restraining order" on the officers. *Id*. at 4.

Even assuming Borders' allegations are consistent with Fourth Amendment violations by the defendants—a conclusion the court does not reach at this point—he faces another hurdle. The events in question occurred on February 25, 2019, more than five years ago. In Indiana, a two-year statute of limitations applies to Fourth Amendment excessive force claims brought pursuant to 42 U.S.C. § 1983. *See e.g.*, *Snodderly v. R.U.F.F. Drug Enf't Task Force*, 239 F.3d 892, 894 (7th Cir. 2001) ("Indiana's two-year statute of limitations . . . is applicable to all causes of action brought in Indiana under 42 U.S.C. § 1983."). Excessive force claims accrue when the plaintiff has "knowledge of the injury and that the defendant or an employee of the defendant acting within the scope of his or her employment may have caused the injury." *Liberty v. City*

3

*of Chicago*, 860 F.3d 1017, 1019 (7th Cir. 2017) (quoting *Arteaga v. United States*, 711 F.3d 828, 831 (7th Cir. 2013)); *see also Foryoh v. Triton Coll.*, 197 Fed. Appx. 500, 501 (7th Cir. 2006) (an excessive force claim brought in connection with an arrest accrues "at the time of the arrest"). Although the statute of limitations is an affirmative defense, dismissal is appropriate when the complaint makes it clear that the claims are time barred. *See e.g., Cancer Foundation, Inc. v. Cerberus Capital Mgmt.*, LP, 559 F.3d 671, 674 (7th Cir. 2009); *see also Koch v. Gregory*, 536 Fed. Appx. 659, 660 (7th Cir. 2013) (The plaintiff's "only other argument on appeal is that the district judge erred by considering the statute of limitations prematurely at the screening stage. But the language of [the plaintiff's] complaint plainly showed that the statute of limitations barred his suit; dismissal under § 1915A was therefore appropriate.").

Here, the statute of limitations period ended on February 25, 2021. Borders' complaint was not filed until May 9, 2024, over three years too late. Borders claims he found out "after sometime" that Lt. Robinson had a round missing from the magazine on his vest, leading him to speculate Lt. Robinson—in addition to Officer O'Sheilds— could have shot him. Although Borders doesn't provide an exact date he learned this information, public records show he entered into a plea agreement in connection with the events in question on May 6, 2020, and that he was adjudged guilty and sentenced on May 20, 2020. *See State of Indiana v. Dustin Lee Borders*, cause no. 79D02-1903-F2-000009 (filed Mar. 6, 2019), available at https://public.courts.in.gov/mycase (last

4

visited May 10, 2024).² Both of these dates are well in advance of the statute of limitation deadline, and it's not plausible that Borders didn't have access to the relevant information in his case by at least that time. More importantly, based on what Borders *does* state, it's clear he knew of his injuries and what had caused them—he was allegedly shot, punched in the face, and kneed in the back by officers of the Lafayette Police Department during the course of the arrest—when the events unfolded on February 25, 2019. The fact that he later learned three shots may have been fired as opposed to two, doesn't excuse his failure to file his complaint within the two-year limitation period. *See Olrich v. Kenosha Cty.*, 825 Fed. Appx. 397, 399 (7th Cir. 2020) (noting that the "discovery rule" did not save plaintiff's untimely claims because he was "present at his arrests" and "[n]othing prevented him from appreciating any alleged violations that occurred"); *Moore v. Vagnini*, 673 Fed. Appx. 584, 586 (7th Cir. 2017) (plaintiff claiming excessive force and improper body-cavity search knew "he had suffered an injury and that knowledge foreclosed any assertion on his part that he did not 'discover' his injury" in time because he "did not need to know under what legal theory he had a claim, or even that he had a claim at all, to know that he had suffered harm").

Accordingly, on its face, Borders' complaint appears to be time-barred. In the interests of justice, however, the court will give him an opportunity to file an amended

---

² The court is permitted to take judicial notice of public documents in assessing Borders' claims. *See* FED. R. EVID. 201; *Tobey v. Chibucos*, 890 F.3d 634, 647–48 (7th Cir. 2018); *Daniel v. Cook Cty.*, 833 F.3d 728, 742 (7th Cir. 2016) ("courts routinely take judicial notice of the actions of other courts or the contents of filings in other courts").

complaint that includes an explanation of what, if anything, prevented him from bringing this lawsuit within two years of the incident. If Borders believes he can amend his complaint to address the concerns outlined in this order, he may do so as explained below.

This complaint does not state a claim for which relief can be granted. If Borders believes he can state a claim based on (<u>and consistent with</u>) the events described in this complaint, he may file an amended complaint because "[t]he usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). To file an amended complaint, he needs to write this cause number on a **Pro Se 14 (INND Rev. 2/20) Prisoner Complaint** form which is available from his law library. He needs to write the word "Amended" on the first page above the title "Prisoner Complaint" and send it to the court after he properly completes the form.

For these reasons, the court:

(1) GRANTS Dustin Lee Borders until **June 14, 2024**, to file an amended complaint; and

(2) CAUTIONS Dustin Lee Borders if he does not respond by the deadline, this case will be dismissed under 28 U.S.C. § 1915A without further notice because the current complaint does not state a claim for which relief can be granted.

SO ORDERED on May 13, 2024.

s/*Cristal C. Brisco*
CRISTAL C. BRISCO, JUDGE
UNITED STATES DISTRICT COURT